# Illinois Official Reports

## Supreme Court

---

### *City of Chicago v. City of Kankakee*, 2019 IL 122878

---

| | |
|---|---|
| Caption in Supreme Court: | THE CITY OF CHICAGO *et al.*, Appellees, v. THE CITY OF KANKAKEE *et al.*, Appellants. |
| Docket No. | 122878 |
| Filed | March 21, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Scott C. Solberg, of Eimer Stahl LLP, of Chicago, for appellant City of Kankakee. |
| | James A. Murphy, of Mahoney, Silverman & Cross, LLC, of Joliet, for appellant Village of Channahon. |
| | Scott A. Browdy and Brian L. Browdy, of Ryan Law Firm, LLP, of Chicago, for appellant Inspired Development LLC. |

Steven P. Blonder, of Much Shelist, P.C., of Chicago, for appellants MTS Consulting, LLC, *et al.*

Edward N. Siskel, Acting Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Julian N. Henriques Jr., Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Michael Lorge, Corporation Counsel, of Skokie (James McCarthy, Assistant Corporation Counsel, of counsel), for appellee Village of Skokie.

Kimball R. Anderson, Loren G. Rene, and Cara A. Lawson, of Winston & Strawn LLP, Mark P. Rotatori and Morgan R. Hirst, of Jones Day, Charles K. Schafer and Scott J. Heyman, of Sidley Austin LLP, Catherine A. Battin, of McDermott, Will & Emery LLP, and Daniel M. Blouin and William I. Goldberg, of Seyfarth Shaw LLP, all of Chicago, for *amicus curiae* Internet Retailers.

Gino L. DiVito, Daniel I. Konieczny, and Jordan E. Wilkow, of Tabet DiVito & Rothstein LLC, and Timothy L. Bertschy, John P. Heil Jr., and Brett M. Mares, of Heyl, Royster, Voelker & Allen, P.C., both of Chicago, for *amicus curiae* Regional Transportation Authority.

Justices    JUSTICE THEIS delivered the judgment of the court, with opinion.
Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.
Justice Neville took no part in the decision.

## OPINION

¶ 1    Plaintiff municipalities brought this cause of action against defendant municipalities and brokers seeking to recover tax revenue purportedly owed to them under the Use Tax Act (35 ILCS 105/1 *et seq.* (West 2016)). The circuit court of Cook County dismissed plaintiffs' claims with prejudice and denied plaintiffs leave to file a fourth amended complaint. The appellate court reversed and remanded. 2017 IL App (1st) 153531, ¶ 45. For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

## BACKGROUND

This case concerns two types of Illinois state taxes: a "retailers occupation tax," more commonly known as "sales tax," authorized by the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/1 *et seq.* (West 2016)), and the "use tax" authorized by the Use Tax Act (UTA) (35 ILCS 105/1 *et seq.* (West 2016)). Sales tax is imposed on the sale of tangible personal property purchased in Illinois. 35 ILCS 120/2 (West 2016). In contrast, use tax is imposed on the privilege of using in Illinois tangible personal property purchased at retail from a retailer outside the state. 35 ILCS 105/3 (West 2016). Pursuant to UTA, retailers who have a sufficient physical presence in Illinois and have out-of-state facilities from which Internet, telephone, and mail order sales are made of tangible personal property to be used in Illinois must collect a use tax from the purchaser, and that tax is remitted to the Illinois Department of Revenue (IDOR). The purpose of the use tax is " 'primarily to prevent avoidance of [the sales] tax by people making out-of-State purchases, and to protect Illinois merchants against such diversion of business to retailers outside Illinois.' " *Performance Marketing Ass'n v. Hamer*, 2013 IL 114496, ¶ 3 (quoting *Klein Town Builders, Inc. v. Department of Revenue*, 36 Ill. 2d 301, 303 (1966)).

Under the respective statutes, the general rate set in Illinois for both sales tax and use tax is 6.25% of the sale price of the item with 5% allocated to the State. 35 ILCS 105/3-10 (West 2016); 35 ILCS 120/2-10 (West 2016); 30 ILCS 105/6z-18 (West 2016). At issue here is a dispute about what happens to the remaining 1.25%. Under ROTA, the remaining amount is distributed geographically to the municipality (1%) and county (0.25%) where the sale of the item actually occurred. 30 ILCS 105/6z-18 (West 2016).

The distribution of funds under UTA is more complicated. Unlike the local share of sales tax, which is distributed entirely where the sale takes place, under UTA, the remaining 1.25% share of the use tax is distributed in the following percentages: 20% of the fund goes to Chicago, 10% to the Regional Transportation Authority Occupation and Use Tax Replacement Fund (RTA Fund), 0.6% to the Madison County Mass Transit District, and $3.15 million to the Build Illinois Fund. The balance of the fund is distributed to all other municipalities (except Chicago) based on their proportionate share of the state population. *Id.* § 6z-17. Consequently, a municipality receives a larger amount from a local sale subject to the sales tax than from a comparable sale subject to the use tax.

In 2011, this litigation began as three separate cases filed by the Regional Transportation Authority (RTA) (No. 11 CH 29744), the City of Chicago (No. 11 CH 29745), and Cook County (No. 11 CH 34266). The cases were consolidated by the trial court. This appeal concerns only the case brought by the City of Chicago and the Village of Skokie, which was added as a plaintiff in 2012.

In December 2013, plaintiffs filed their third amended complaint against the City of Kankakee and the Village of Channahon (municipal defendants) and MTS Consulting, LLC, Inspired Development, Minority Development Co., Corporate Funding Solutions, and Capital Funding Solutions (broker defendants). Plaintiffs claimed that defendants were unjustly enriched through a scheme under which the situs of retail sales was misreported, which deprived plaintiffs of their statutory share of the Illinois use tax.

Plaintiffs alleged in the third amended complaint that beginning in 2000, in order to convince retailers to make sales that would be sourced to their towns, Kankakee and

- 3 -

Channahon, either directly or through the broker defendants, entered into rebate agreements with retailers under which the municipalities would return a portion of the sales tax to the retailer. Plaintiffs further alleged that defendants used the rebate agreements to divert tax revenue from plaintiffs through a wrongful "use tax-sales tax swap." According to plaintiffs, defendants encouraged and assisted Internet retailers to manipulate the system by misreporting the situs of the sale in order to swap the state use tax for the state sales tax.

¶ 9 Plaintiffs further alleged that little or no meaningful sales activity took place in the offices maintained in Kankakee and Channahon on behalf of the Internet retailers. They were maintained for the sole purpose of having the Internet retailers obtain a tax rebate from the municipality. Plaintiffs alleged that, although the Internet retailers' acceptance of customer orders occurred outside of Illinois, they reported to IDOR that sales took place in Kankakee or Channahon, thus subjecting those sales to sales tax, rather than use tax. These activities, plaintiffs claimed, had the effect of wrongfully taking what should have been plaintiffs' local share of the use tax and diverting it to defendant municipalities in the form of their share of the sales tax, thereby unjustly enriching defendants.

¶ 10 Count I of the two-count third amended complaint was against defendants for unjust enrichment. Plaintiffs sought a declaration that certain Internet retailers were subject to the state use tax, rather than the state sales tax; the imposition of a constructive trust on all sales tax revenue received by Kankakee, Channahon, and the brokers as a result of the Internet retailers being subject to the state sales tax rather than the state use tax; and compensatory damages in the amount of use tax revenue plaintiffs lost as a result of the use tax-sales tax swap.[1]

¶ 11 In April 2015, plaintiffs sought leave to file a fourth amended complaint. The proposed fourth amended complaint asserted claims against four groups of defendants: the previously identified municipal defendants; the broker defendants;[2] 11 Internet retailer defendants;[3] and three groups of operating and procurement company defendants.[4] Counts I, III, V, and VII of the proposed fourth amended complaint sought declaratory relief. Specifically, plaintiffs sought a declaration that certain sales of Internet retailer defendants and certain purchases of operating procurement company defendants were subject to state use tax. Counts II, IV, VI, and VIII raised a claim for unjust enrichment and sought a constructive trust and restitution. In those counts, plaintiffs sought to impose a constructive trust on all sales tax revenue received by the municipal and broker defendants as a result of the purported unjust enrichment, an equitable accounting, and the return of the property to plaintiffs as restitution from the municipal and broker defendants.

---

[1]Count II of the third amended complaint sought relief against defendants for unjust enrichment with respect to transactions with "operating companies" and "procurement subsidiaries." Count II claims were abandoned and are no longer part of the case.

[2]Plaintiffs added a new broker defendant, Ryan, LLC, and dropped all other broker defendants with the exception of MTS Consulting, LLC, and Capital Funding Solutions.

[3]Cabela's, Inc.; CompuCom Systems, Inc.; Dell Marketing, L.P.; Hewlett-Packard Company; HSN, Inc.; Lenovo, Inc.; McKesson Purchasing Company, LLC; NCR Corp.; Shaw Industries, Inc.; Wesco Distribution, Inc.; and Williams-Sonoma, Inc.

[4]AT&T Network Procurement, LP; USCC Purchase, LLC; and Verizon Wireless Network Procurement, LP.

¶ 12     On October 9, 2015, the trial court denied plaintiffs' motion for leave to file their fourth amended complaint and dismissed plaintiffs' claims with prejudice. The trial court found that plaintiffs' claims for declaratory action failed because the conduct of which plaintiffs complained ceased in 2014. Thus, the purpose of the declaratory action—to allow the court to address a controversy after a dispute has arisen but before action is taken by the parties—would not be served.

¶ 13     As to plaintiffs' claims against the municipal defendants, the trial court dismissed them because it found that IDOR has exclusive jurisdiction over tax distribution cases. It held that plaintiffs were attempting to judicially preempt IDOR's authority to audit tax payments and to redistribute amounts collected, by attempting to bypass IDOR, which has both the authority and the expertise to do that job. The trial court also found that a ruling in plaintiffs' favor would require defendant municipalities to repay IDOR the local share that purportedly was improperly distributed to them. IDOR then would have to redistribute those funds, not only to plaintiffs, but also to multiple governing bodies that are not even parties to the case, pursuant to the statutory use tax distribution provisions.

¶ 14     Additionally, concerning plaintiffs' claims against the nonmunicipal defendants—unjust enrichment, constructive trust, and restitution—the trial court found that those somewhat overlapping theories concerned remedies, not freestanding causes of action, and that plaintiffs had proposed a remedy without articulating an actionable wrong. The trial court found that plaintiffs could not state a viable cause of action against the nonmunicipal defendants because they had no dealings with plaintiffs, got nothing from plaintiffs, and did not have anything that belonged to them.

¶ 15     Plaintiffs moved to reconsider and provided a revised proposed fourth amended complaint that removed their declaratory judgment counts. Count I was for unjust enrichment, constructive trust, and restitution against the Internet retailer defendants. Count II was identical but against the municipal and broker defendants based on Internet retail sales. The trial court denied plaintiffs' motion to reconsider.

¶ 16     The appellate court reversed and remanded with directions to permit plaintiffs to file the claims set forth in counts I and II of the revised proposed fourth amended complaint. 2017 IL App (1st) 153531, ¶¶ 44-45. The appellate court found that plaintiffs' third amended complaint and revised fourth amendment complaint stated valid claims for unjust enrichment against defendants and the proposed Internet retailer defendants. *Id.* ¶ 44. Further, the appellate court concluded that IDOR did not have exclusive jurisdiction over the unjust enrichment claims in plaintiffs' third and fourth amended complaints. *Id.*

¶ 17     This court granted the petition for leave to appeal filed by the municipal defendants and four of the broker defendants (Inspired Development, MTS Consulting, LLC, Capital Funding Solutions, and Corporate Funding Solutions).[5] Ill. S. Ct. R. 315 (eff. Nov. 1, 2017). We also allowed various Internet retailers[6] identified in the proposed fourth amended complaint to file

---

[5]This court subsequently entered an agreed order recognizing that plaintiffs reached a settlement with the Village of Channahon and Inspired Development. All claims against Channahon and Inspired Development regarding sales processed through Channahon were dismissed with prejudice. The order did not affect plaintiffs' claims relating to sales processed through Kankakee.

[6]Dell Marketing, L.P.; Williams-Sonoma, Inc.; NCR Corp.; Cabela's, Inc.; and HSN, Inc.

an *amicus curiae* brief in support of defendants. We further allowed the RTA to file an *amicus curiae* brief in support of plaintiffs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 18                                                                              ANALYSIS

¶ 19       Defendants assert that the appellate court erred by reversing the circuit court's denial of plaintiff's motion for leave to file a fourth amended complaint because further amendment would not cure plaintiffs' defective pleadings. Specifically, defendants contend that the circuit court lacked subject-matter jurisdiction to consider plaintiffs' claims because IDOR has exclusive jurisdiction over this dispute, which concerns the assessment, collection, and distribution of Illinois taxes.

¶ 20       In determining whether a motion to amend should have been granted by the circuit court, we consider the following four factors: whether the proposed amendment would cure the defective pleading, whether the proposed amendment would surprise or prejudice the opposing party, whether the proposed amendment was timely filed, and whether the moving party had previous opportunities to amend. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 69. Although rulings on motions for leave to amend are reviewed for an abuse of discretion (*id.*), the purported defects here relate to the circuit court's jurisdiction and require us to interpret the relevant statutory framework, all matters of law that are subject to *de novo* review (*J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 25).

¶ 21       We initially note that this case concerns conduct that occurred prior to this court's decision in *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130. There, we determined that the "business of selling" for purposes of retailer occupation taxes is a fact-intensive inquiry requiring a totality-of-the-circumstances analysis. We held that certain IDOR regulations were invalid because they did not amply prescribe this fact-intensive inquiry and allowed for only one minor step in the business of selling to conclusively govern tax situs. *Id.* ¶¶ 32-34, 64. Prior to 2014, the Illinois Administrative Code had provided, in pertinent part, that where an authorized representative within Illinois accepts orders on behalf of businesses, those sales would be subject to sales tax in the municipalities where the orders were accepted. See 86 Ill. Adm. Code 130.610, amended at 36 Ill. Reg. 6662 (eff. Apr. 12, 2012). Following *Hartney*, IDOR repealed section 130.610 of the Illinois Administrative Code. See 86 Ill. Adm. Code 130.610, repealed at 38 Ill. Reg. 19998 (eff. Oct. 1, 2014). With the repeal of the regulation, the conduct complained of here is no longer possible. The question in this appeal concerns whether the circuit court can assess the propriety of the challenged pre-*Hartney* transactions or if that responsibility falls under the exclusive authority of IDOR.

¶ 22       Subject-matter jurisdiction refers to a tribunal's power to hear and determine cases of the general class to which the proceeding in question belongs. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 27. Generally, under the Illinois Constitution, circuit courts have original jurisdiction over all justiciable matters, except in certain circumstances where this court has exclusive and original jurisdiction. Ill. Const. 1970, art. VI, § 9. This court has recognized a line of cases "holding that our General Assembly may vest original jurisdiction in an administrative agency rather than the courts when it enacts a comprehensive statutory scheme that creates rights and duties that have no counterpart in common law or equity." *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 14

(citing *J&J Ventures*, 2016 IL 119870, ¶ 23).[7] In other words, the legislature may define a justiciable matter in such a way as to preclude or limit the circuit court's jurisdiction. *People v. NL Industries*, 152 Ill. 2d 82, 97 (1992).

¶ 23    There is no dispute in this case as to justiciability, and the matter is not one that falls within this court's original and exclusive jurisdiction. Similarly, there is no dispute that the State has the authority to levy, assess, and collect sales taxes and use taxes, and no counterpart exists at common law. See *People ex rel. Shirk v. Glass*, 9 Ill. 2d 302, 311 (1956) ("The levy, assessment and collection of taxes are purely statutory and the levy, assessment and collection of taxes can only be made as expressly pointed out in the statute.").

¶ 24    Defendants argue, however, that, although plaintiffs attempt to cloak their cause of action in the attire of equity, their claims are purely statutory and under the applicable framework the legislature has vested IDOR with the exclusive authority to act.[8]

¶ 25    In *J&J Ventures*, relied upon by defendants, the parties argued that the circuit court had subject-matter jurisdiction to determine the validity of location agreements for video gaming machines between the plaintiffs and the defendants because the legislature had not explicitly divested the circuit court of jurisdiction in the Video Gaming Act (230 ILCS 40/1 *et seq.* (West 2014)). *J&J Ventures*, 2016 IL 119870, ¶¶ 21, 24. We disagreed, finding that the Illinois Gaming Board had exclusive jurisdiction to determine the validity of the agreements between the plaintiffs and the defendants and that the circuit court had no jurisdiction to decide plaintiffs' actions for declaratory judgment related to those contracts. *Id.* ¶¶ 32-33.

¶ 26    In so holding, we recognized that the absence of an explicit divestiture of circuit court jurisdiction did not mean that the legislature did not intend to divest the court of jurisdiction. *Id.* ¶ 24. We held that, under our case law, "legislative intent to divest circuit courts of jurisdiction may be discerned by considering the statute as a whole." *Id.*

¶ 27    Plaintiffs rely on *Village of Itasca v. Village of Lisle*, 352 Ill. App. 3d 847 (2004), and *State ex rel. Beeler, Schad & Diamond, P.C. v. Ritz Camera Centers, Inc.*, 377 Ill. App. 3d 990 (2007), for the proposition that the circuit court had subject-matter jurisdiction over their claims. Neither case informs our decision here. The appellate court in both cases relied on the rule in *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284 (1994), that the legislature's divestment of circuit court jurisdiction must be explicit. However, in *J&J Ventures* this court clarified that the absence of an explicit divestiture of circuit court jurisdiction is not dispositive. *J&J Ventures*, 2016 IL 119870, ¶ 24; see also *Zahn*, 2016 IL 120526, ¶¶ 14-16. Further, we note that *Itasca*, which *Ritz Camera* simply followed on the issue of subject-matter jurisdiction, involved an issue over the proper situs of sales tax between two municipalities, while *Ritz Camera* concerned a claim brought under the Whistleblower Reward and Protection Act (740 ILCS 175/1 *et seq.* (West 2002)[9]). *Village of Itasca*, 352 Ill. App. 3d at 853; *Ritz Camera*, 377

---

[7] This court has also recognized that, while our precedent refers to the "jurisdiction" of administrative agencies, the term is not strictly applicable when referring to an administrative agency. The term "jurisdiction" is used as shorthand for describing the agency's authority to act. *Zahn*, 2016 IL 120526, ¶ 14 n.2.

[8] The Internet retailers, in their *amicus curiae* brief, join in this argument.

[9] The Whistleblower Reward and Protection Act has since been amended and renamed the Illinois False Claims Act. Pub. Act 96-1304 (eff. July 27, 2010).

Ill. App. 3d at 993, 1006-07. In contrast to plaintiffs' complaint, neither case concerned the proper distribution of use taxes over a multiyear period, impacting multiple municipalities and other entities that receive a proportionate share of use tax receipts.

¶ 28 *J&J Ventures* illustrates that even if the task before the circuit court is one courts perform frequently, such as interpreting a contract, that is not dispositive of whether the court has jurisdiction. Rather, legislative intent to vest jurisdiction in an administrative agency may be discerned by considering the statutory framework as a whole. *J&J Ventures*, 2016 IL 119870, ¶¶ 24-25. When interpreting a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. *Id.* ¶ 25. All provisions of a statute must be viewed as a whole, with the relevant statutory provisions construed together and not in isolation. *Id.* "In addition, the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute in one way or another." *Id.*

¶ 29 Turning to the statutory framework at issue, IDOR's authority in this area of taxation is spread among the Department of Revenue Law (Revenue Law) (20 ILCS 2505/2505-1 *et seq.* (West 2016)), the State Finance Act (Finance Act) (30 ILCS 105/1 *et seq.* (West 2016)), and the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2016)).

¶ 30 For purposes of administering ROTA, the legislature has provided IDOR with "the power to administer and enforce all the rights, powers, and duties contained in [ROTA] to collect all revenues thereunder and to succeed to all the rights, powers, and duties previously exercised by the Department of Finance in connection therewith." 20 ILCS 2505/2505-25 (West 2016). Similarly, IDOR, for purposes of administering UTA, "has the power to exercise all the rights, powers, and duties vested in [IDOR] by the [UTA]." *Id.* § 2505-90. IDOR also has "the power to make reasonable rules and regulations that may be necessary to effectively enforce" its powers under ROTA and UTA. *Id.* § 2505-795.

¶ 31 IDOR is responsible for accepting the receipt of state sales and use taxes. Pursuant to section 3 of ROTA, a retailer engaged in the business of selling tangible personal property in Illinois must remit to IDOR the sales tax owed on the sale of that property. 35 ILCS 120/3 (West 2016). The retailer must also file a tax return with IDOR that reports the total amount of its gross receipts during the preceding calendar month or quarter and upon the basis of which the tax is imposed. *Id.* It must additionally provide IDOR with the address of the principal place of business from which the retailer engages in the business of selling tangible personal property in Illinois. *Id.* Likewise, under section 9 of UTA, all retailers that are required to collect use tax must file tax returns with IDOR declaring the amount of use tax collected during the applicable period and remit the collected tax to IDOR. 35 ILCS 105/9 (West 2016).

¶ 32 The legislature has also provided IDOR, for purposes of administering and enforcing ROTA and UTA, with the power to examine and correct tax returns, conduct investigations and hearings, and to make corrections in records and disbursements.

¶ 33 Section 8 of ROTA provides, in pertinent part:

"[IDOR] *** may hold investigations and hearings *** concerning any matters covered by this Act and may examine any books, papers, records or memoranda bearing upon the sales of tangible personal property or services of any such person, and may require the attendance of such person or any officer or employee of such person, or of any

person having knowledge of such business, and may take testimony and require proof of its information." 35 ILCS 120/8 (West 2016).

¶ 34　　Section 11 of UTA, in turn, provides:

"Every retailer required or authorized to collect taxes hereunder *** shall keep such records, receipts, invoices and other pertinent books, documents, memoranda and papers as [IDOR] shall require, in such form as [IDOR] shall require. *** [IDOR] *** may hold investigations and hearings concerning any matters covered herein and may examine any books, papers, records, documents or memoranda of any retailer or purchaser bearing upon the sales or purchases of tangible personal property, the privilege of using which is taxed hereunder, and may require the attendance of such person or any officer or employee of such person, or any person having knowledge of the facts, and may take testimony and require proof for its information." 35 ILCS 105/11 (West 2016).

¶ 35　　IDOR has additionally been vested with the authority to examine tax returns and to make corrections according to its best judgment and information, to issue notices of tax liability, to impose penalties, to entertain protests and requests for hearings and rehearings, and to issue final assessments. See *id.* § 12; 35 ILCS 120/4 (West 2016). IDOR also has the responsibility to correct errors in its records, and if an error is due to a mistake in reporting by the taxpayer and the taxpayer agrees that he or she has made a reporting error that should be corrected, IDOR has the authority to correct the records accordingly. 20 ILCS 2505/2505-475 (West 2016).

¶ 36　　The legislature has also made IDOR responsible for the distribution of the sales and use taxes it collects.

¶ 37　　For retail sales subject to the sales tax, the municipality in which the sale actually occurs receives revenue equal to 1% of the retail price, while the county in which the sale occurs receives the remaining 0.25% of the retail price. 30 ILCS 105/6z-18 (West 2016). For retail sales that are subject to the use tax, the 1.25% is deposited into the State and Local Sales Tax Reform Fund, a fund administered by IDOR. *Id.* § 6z-17. IDOR is then responsible under the Finance Act to disburse those funds on a monthly basis as follows: 20% to Chicago, 10% to the RTA Fund, 0.6% to the Madison County Mass Transit District, $3.15 million to the Build Illinois Fund, and the remainder of the fund to all other municipalities (except Chicago) based on their proportionate share as provided by statute. *Id.*

¶ 38　　Additionally, the legislature has vested IDOR under section 6z-18 of the Finance Act, which controls disbursements by IDOR from the applicable tax fund, with the following duty:

"When certifying the amount of monthly disbursement to a municipality or county under this Section, [IDOR] shall increase or decrease that amount by an amount necessary to offset any misallocation of previous disbursements. The offset amount shall be the amount erroneously disbursed within the 6 months preceding the time a misallocation is discovered." *Id.* § 6z-18.

¶ 39　　Based upon the statutory framework above, we find that IDOR has been vested, for purposes of plaintiffs' claims, with the exclusive authority to audit the reported transactions that plaintiffs dispute and to distribute or redistribute the tax revenue due to any error. The legislature has empowered IDOR with broad investigatory authority, including the right to examine, correct, and adjust errors in tax reporting. IDOR has the power to review records in

connection with previously filed tax returns, to issue refunds or notices of tax liability, and to adjust current tax liability based on changes it may make to prior tax returns. IDOR is also authorized to conduct hearings and issue final assessments concerning tax liability.

¶ 40 Here, the municipal defendants obtained certain tax distributions based upon allegedly missourced sales taxes going back to 2000, which plaintiffs now seek to recover as a proportionate share of the use taxes owed to them under UTA. The alleged enrichment of the nonmunicipal defendants occurred because of the rebate agreements entered into with the municipal defendants and not due to any direct dealings with plaintiffs.

¶ 41 To resolve plaintiffs' claims, the circuit court would have to determine the proper tax situs of thousands of pre-*Hartney* retail sales stretching back at least 14 years. If plaintiffs prevailed on liability, the circuit court would then have to determine the amount of tax revenues plaintiffs would have received on each of the applicable transactions had the Internet retailers reported use tax rather than sales tax to IDOR. Plaintiffs assert that such a determination falls within the conventional competence of the courts and requires mere arithmetic calculations. We disagree.

¶ 42 As the circuit court emphasized, plaintiffs, in essence, are seeking to use the circuit court to conduct a full-scale audit and redistribution of state taxes. IDOR has been given that authority by the legislature, not the circuit court. IDOR has also been provided by the legislature with the resources, and by extension the expertise, to conduct such an audit. Furthermore, for purposes of plaintiffs' claims, IDOR has the exclusive authority under the Finance Act to distribute or redistribute tax revenue collected under UTA to the other numerous local governing bodies who are not parties to this case. IDOR has specifically been tasked with correcting errors in past use tax distributions to these governing bodies, while the circuit court has not.

¶ 43 Section 8-11-21(a) of the Municipal Code (65 ILCS 5/8-11-21(a) (West 2016)) supports our determination that the circuit court lacks subject-matter jurisdiction to consider plaintiffs' claims. This section allows a municipality that has been denied *sales* tax revenue because of a rebate agreement in violation of the Municipal Code to file an action in the circuit court against only the offending municipality. *Id.*

¶ 44 We find that section 8-11-21 of the Municipal Code shows that, in order for a municipality to have the right to bring a cause of action in court about missourcing or misreporting of *use* taxes, the municipality must be given that right by the General Assembly. Our legislature, however, has not authorized such suits. It has chosen to only permit municipalities to bring a cause of action in the circuit court for missourced sales tax, and then only as a result of a rebate agreement entered after June 1, 2004. *Id.* No similar provision authorizes suits for the denial of use tax revenue due to alleged misreporting.

¶ 45 For the foregoing reasons, we hold that IDOR has exclusive authority over plaintiffs' claims against defendants.

¶ 46                                    CONCLUSION

¶ 47 Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court, dismissing plaintiffs' claims with prejudice and denying plaintiffs leave to file a fourth amended complaint, is affirmed.

¶ 48        Appellate court judgment reversed.

¶ 49        Circuit court judgment affirmed.

¶ 50        JUSTICE NEVILLE took no part in the consideration or decision of this case.