**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190253-U

Order filed March 30, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| TRUCK INSURANCE EXCHANGE, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff and Counterdefendant-Appellee, | ) | Grundy County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| ROGER A. D'ORAZIO, JR., | ) | |
| | ) | |
| Defendant, Counterplaintiff, and Third | ) | |
| Party Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| *In re* ESTATE OF JAMES RESTAINO, | ) | |
| Deceased (Jodi-Ann S. Kasky, Executor and | ) | Appeal No. 3-19-0253 |
| Trustee); FARMERS GROUP, INC.; | ) | Circuit No. 15-MR-33 |
| FARMERS INSURANCE EXCHANGE; | ) | |
| FIRE INSURANCE EXCHANGE; ILLINOIS | ) | |
| FARMERS INSURANCE COMPANY; | ) | |
| MID-CENTURY INSURANCE COMPANY; | ) | |
| FOREMOST INSURANCE COMPANY | ) | |
| GRAND RAPIDS, MICHIGAN; FOREMOST | ) | |
| PROPERTY & CASUALTY INSURANCE | ) | |
| COMPANY; FOREMOST SIGNATURE | ) | |
| INSURANCE COMPANY; and BRISTOL | ) | |
| WEST INSURANCE COMPANY, | ) | |
| | ) | |
| Third Party Defendants-Appellees, | ) | Honorable |
| | ) | Lance R. Peterson, |
| (Boyd Group (U.S.) Inc., Defendant). | ) | Judge, Presiding. |

_____

          JUSTICE HOLDRIDGE delivered the judgment of the court.
          Justices Lytton and Wright concurred in the judgment.
_____

**ORDER**

¶ 1       *Held*:  The circuit court did not abuse its discretion when it denied the appellant's request to amend his pleading for a third time.

¶ 2       This case originated as a declaratory action involving an insurance dispute between Truck Insurance Exchange, one of many insurers comprising Farmers Insurance Group (Farmers), and Roger A. D'Orazio, Jr. D'Orazio filed a counterclaim and third-party complaint against his Farmers insurance agent, James Restaino, and all Farmers entities. The circuit court granted various motions to dismiss and dismissed three versions of his complaint. D'Orazio sought leave to file a fourth pleading, which the court denied, dismissing the case with prejudice.

¶ 3                     I. BACKGROUND

¶ 4       In April 2014, D'Orazio sold his business, Collision Revision, to Boyd Group (U.S.) Inc. for $32.5 million. In October 2014, Boyd filed a complaint against D'Orazio in the United States District Court for the Northern District of Illinois (hereinafter referred to as the Boyd lawsuit). Boyd alleged, among other things, breach of contract, tortious interference, fraud, and negligent misrepresentation. D'Orazio tendered Boyd's complaint to Truck Insurance Exchange, Collision Repair's insurer at the time of the sale, for defense and indemnity. Truck Insurance Exchange denied coverage.

¶ 5       In March 2015, Truck Insurance Exchange filed a complaint for declaratory relief in the circuit court of Grundy County, naming D'Orazio and Boyd as defendants (735 ILCS 5/2-701 (West 2014)). Truck Insurance Exchange sought a declaratory judgment providing that the commercial general liability and umbrella policies that it sold to Collision Revision did not insure

2

breach of covenants to Boyd. Both Truck Insurance Exchange and D'Orazio filed motions for a judgment on the pleadings. In June 2016, the court granted Truck Insurance Exchange's motion, finding that it owed no duty to defend or indemnify D'Orazio in the Boyd lawsuit. Boyd was later dismissed from the case with prejudice. This judgment on the pleadings is not contested on appeal.

¶ 6                                    A. The Pleadings

¶ 7        In May 2015, D'Orazio filed a counterclaim against Truck Insurance Exchange and a third-party complaint against Farmers entities and Farmers' insurance agent James Restaino. Following various motions to dismiss and two amended pleadings, D'Orazio sought leave to file his fourth pleading: the third amended counterclaim and third-party complaint. The proposed amended pleading set forth the following facts and causes of action.

¶ 8                                         1. Facts

¶ 9        In 1976, D'Orazio founded Collision Revision, an automobile collision repair company. Around 1980, he contacted Restaino for assistance in purchasing business insurance. Restaino served as Collision Revision's sole insurance advisor from the early 1980s until it was sold in April 2014. For over 30 years, Restaino advised Collision Revision regarding its insurance needs and procured all of its insurance.

¶ 10        During the course of the relationship, Restaino invited D'Orazio to Farmers' regional headquarters multiple times, and during those visits, Restaino represented that he was well-known within the company and well-respected for his insurance knowledge and expertise. Restaino represented that he was in charge of radio advertising for Farmers at the regional level. Restaino would refer other Farmers insureds and agents to Collision Repair for vehicle repairs. Collision Revision provided Restaino with free vehicle repairs for his services in addition to paying in full all of its insurance premiums for the Farmers policies. Also, D'Orazio paid premiums for

3

Restaino's services with respect to personal insurance policies he purchased from Farmers.

¶ 11        Farmers retained ultimate control over Restaino's marketing. Farmers' website directed consumers to Restaino through its "Find an Agent" feature, which enabled consumers to "experience great service from a knowledgeable insurance professional." The website also detailed that its agents underwent a rigorous training program; agents "put their professional experience to work for you, helping you choose the coverage you want that is suited to your needs"; and offered insureds advice regarding coverage to suit their needs through the Farmers Friendly Review process. However, courses offered through the University of Farmers were not mandatory and Restaino did not voluntary take any substantive courses regarding the scope of coverage of the insurance policies. D'Orazio stated he relied on these statements and similar statements made by Farmers in continuing to retain Restaino as his business and personal insurance advisor. Additionally, many policies and updates indicated that Restaino was an "elite agent."

¶ 12        D'Orazio stated that, had Restaino had basic training of Directors and Officers (D&O) Liability insurance, he would have recommended that Collision Revision and D'Orazio purchase D&O insurance to fill an obvious gap in coverage. He also stated there were specific events that should have prompted Restaino to offer such coverage. For example, in 2004, D'Orazio asked Restaino to review Collision Revision's insurance program and to advise him of additional liability coverages that could be purchased after Farmers denied coverage for a lawsuit seeking economic damages against Collision Revision (unrelated to the Boyd lawsuit). Restaino repeatedly assured D'Orazio that Collision Revision had complete coverage against liability exposures, including for economic damages, and no further liability coverage was available in the marketplace. However, he failed to inform D'Orazio of other types of coverages available, such as D&O insurance, professional liability insurance, and management liability insurance. From 2004 onward, Restaino

4

made the same assurances and failed to inform D'Orazio of the other policies available that were ordinarily purchased by businesses.

¶ 13    In 2009, D'Orazio questioned Restaino regarding Farmers' pricing. Restaino responded that no other agent would be able to refer the amount of work that he and his fellow agents referred to Collision Revision and what may result in a lower cost of insurance from another provider would be exchanged for the loss of referral business. Around the same time, D'Orazio asked Restaino about Employment Practices Liability Insurance (EPLI) after another entity owned by D'Orazio faced a discrimination claim. He presented a quote for EPLI that also included a quote for D&O insurance from Zurich Insurance Company.[1] Restaino prepared an agenda for the meeting, but the agenda did not explain the scope of D&O insurance. Instead, Restaino explained that D&O insurance only covered lawsuits by shareholders against Collision Revision, and since D'Orazio was the majority shareholder, such insurance was unnecessary. He made no mention that D&O insurance could protect against third-party claims. However, Restaino did recommend that Collision Revision purchase EPLI coverage because it would cover defense costs for third-party claims. D'Orazio declined both EPLI and D&O insurance.

¶ 14    D'Orazio claimed that Restaino's representation that D&O insurance only covered shareholder lawsuits was a material, false statement of fact. He attached an expert witness report providing such. Further, he argued that, had he been informed of the actual scope of D&O insurance, he would have purchased it. D'Orazio stated that Restaino's misrepresentation

---

[1] On appeal, D'Orazio filed a motion for judicial notice regarding Farmers' purported affiliation with Zurich. He provides three publicly available documents. First, an AM Best's credit report dated June 7, 2013, that provides that "Farmers' affiliation with Zurich has facilitated its expansion into the eastern United States, improved its insurance product density, and enhanced its strategy of providing a diverse mix of financial products and services." Second, Zurich Financial Services Group's 2008 Annual Report, which lists Farmers as a significant subsidiary. Third, a 2009 Annual Report providing the same. There are no objections of record, and we grant D'Orazio's motion.

regarding the scope of D&O insurance was a result of Farmers' lack of training. Further, he stated that Restaino was negligent in not recommending D&O insurance to fill gaps in coverage every year when Collision Revision's policy was due for renewal. Restaino failed to correct this misrepresentation, which persisted as a continuing false impression in subsequent renewal periods from 2009 to 2014.

¶ 15    In 2012, a group of inside investors negotiated a purchase of Collision Revision. The purchase was unwound prior to D'Orazio's sale of Collision Revision to Boyd. D'Orazio stated that this event should have been a "red flag" for Restaino to recommend D&O insurance had he been trained in that subject. If D&O insurance was recommended at that time, Collision Revision would have purchased it and would have been covered without any exclusion for the sale to Boyd. In late 2013 and early 2014, another person associated with Collision Revision learned of D&O insurance from a source other than Restaino. The only quote Collision Revision could obtain for D&O insurance excluded any liability for the sale to Boyd due to timing. D'Orazio provided no facts indicating that Restaino was aware of Collision Revision's anticipated sale to Boyd in 2014.

¶ 16    For the period of January 1, 2014, through June 1, 2014, Restaino procured a commercial general liability policy and an umbrella policy for Collision Revision. Other than workers' compensation insurance, Restaino never mentioned, procured, or recommended any additional liability coverages for the 2014 policy period when Collision Revision was sold to Boyd.

¶ 17                    2. Causes of Action

¶ 18    Counts I and II set forth claims of breach of contract against Restaino and Farmers as Restaino's principal. D'Orazio has abandoned these counts on appeal.

¶ 19    Count III set forth a claim of statutory negligence against Restaino under the Insurance Placement Liability Act (735 ILCS 5/2-2201(a) (West 2014)). Specifically, D'Orazio stated that

Restaino was negligent in (1) failing to procure and recommend D&O insurance when it would have been apparent to anyone competently trained that D&O insurance was needed and (2) misrepresenting the scope of D&O insurance. As a result of this negligence, D'Orazio provided that he did not have the benefit of D&O insurance for the Boyd lawsuit. He relied on this lack of D&O insurance for the Boyd lawsuit as his basis for damages throughout his pleading.

¶ 20    Counts IV and V stated claims of common law negligence against Restaino and Farmers as Restaino's principal. D'Orazio provided that Restaino "voluntarily agreed" to provide insurance advisory services and he had a lengthy course of dealing with Collision Revision. He again stated that Restaino was negligent in (1) failing to procure and recommend D&O insurance when it would have been apparent to anyone competently trained that D&O insurance was needed and (2) misrepresenting the scope of D&O insurance. Again, he stated he was without the benefit of such coverage for the Boyd lawsuit.

¶ 21    Counts V and VI set forth claims of negligent misrepresentation against Restaino and Farmers as Restaino's principal. D'Orazio pleaded that Restaino was in the business of supplying information for the guidance of clients in business transactions and that he owed a duty to exercise due care in accordance with professional standards to provide accurate information. He stated that Restaino misrepresented material information when he said that (1) Collision Revision's policies were sufficient to fully insure against any and all reasonably foreseeable risks, (2) no other insurance coverage was available, and (3) D&O insurance was unnecessary. D'Orazio stated that this constituted a breach of Restaino's duty to provide accurate information, and Collision Revision relied on this misleading information in declining D&O insurance.

¶ 22    Counts VI and VII stated claims of common law negligent misrepresentation against Restaino and Farmers as principal. D'Orazio argued that Restaino owed him a duty to exercise due

7

care in accordance with professional standards to provide accurate information. He stated that Restaino's misrepresentation in 2009 regarding the scope of D&O insurance constituted a material misrepresentation of fact, and his failure to recorrect the misrepresentation in 2010, 2011, 2012, and 2013 constituted omissions of material facts. D'Orazio also provided that Restaino failed to disclose his lack of training and knowledge with respect to D&O insurance while representing that he provided expert advice for Collision Revision's insurance needs. Further, D'Orazio stated that Collision Revision relied on Restaino's misleading information and advice in not purchasing D&O insurance in 2009 and every year thereafter.

¶ 23    Counts VIII and IX set forth claims under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2014)) against Restaino and Farmers as Restaino's principal. D'Orazio stated that Restaino violated the Consumer Fraud Act when he: (1) misrepresented that Collision Revision's policies were sufficient to fully insure it against any and all reasonably foreseeable risks; (2) misrepresented that there was no other insurance coverage available; (3) misrepresented the scope of D&O insurance; and (4) failed to disclose his lack of training, knowledge, and ability to provide insurance consulting services and review coverage to advise of additional options. He stated that Restaino intended that D'Orazio rely on his misrepresentations, omissions, and concealments when procuring insurance for Collision Revision in 2009 and thereafter. Also, Restaino intended that he rely on his misrepresentations as to his training to provide business insurance advice. He argued that these misrepresentations, omissions, and concealments were material in that Collision Revision would have procured additional and complete coverage, and Collision Revision relied on the foregoing, which proximately caused D'Orazio to be without additional coverages to pay for the legal expenses and liability resulting from the Boyd lawsuit. D'Orazio also provided that this cause of action related to Farmers' and

8

Restaino's websites and advertising.

¶ 24        Counts X and XI set forth claims under the Consumer Fraud Act solely against Farmers. As to count X, D'Orazio stated that Farmers misrepresented in their advertising that their agents (1) were "rigorously trained," (2) provided expert insurance advice in identifying risks not covered by their existing insurance, and (3) could assist in procuring insurance to cover those identified risks. Regarding the training allegation, D'Orazio stated this was false because Farmers' agents were not required to attend trainings and agents could be advertised as "elite" without substantive training regarding the scope of coverages sold by the agent. He also took issue with various advertising sources that stated: (1) Farmers provided comprehensive insurance coverage; (2) its agents "put their professional experience to work for you, helping you choose the coverage that you want that is suited to your needs"; and (3) the "Farmers Friendly Review" process offered professional advice regarding the appropriate insurance products to address their changing coverage needs. D'Orazio noted that despite these representations, Farmers has admitted that it does not offer D&O insurance, which is a very common and necessary form of business insurance.

¶ 25        D'Orazio stated that Farmers intended that he, insureds, and potential insureds rely on its deceptions, misrepresentations, omissions, and concealments concerning Farmers, an entity that has vast strength, knowledge, and experience that stands behind the Farmers Friendly Review. He stated that these misrepresentations, omissions, and concealments were material in that he would not have continued to purchase business and personal lines of insurance from Farmers or would have paid less had he known the truth regarding Restaino's lack of training.

¶ 26        Count XI set forth class action allegations with respect to the allegations made in count X. D'Orazio identified the following class for the class action:

> "All persons residing in the state of Illinois who purchased insurance from a

Farmers agent and were offered or provided a Farmers Friendly Review. Excluded from the Class are Farmers Entities and their officers, directors, and their immediate families."

¶ 27    D'Orazio stated three common issues: (1) whether Farmers participated in and pursued the course of conduct complained of; (2) whether Farmers' conduct complained of constituted a violation of the Consumer Fraud Act; and (3) whether D'Orazio and class members have sustained damages, and if so, the proper measure of damages.

¶ 28                                    B. The Circuit Court's Order

¶ 29    The circuit court denied D'Orazio's request to amend his pleading for a third time. The court found that the parties would not be prejudiced by the third amended pleading; the case was old due to D'Orazio's efforts to name all possible parties, which resulted in lengthy discovery and motion practice; he already had opportunities to amend and this would be his fourth version; and the proposed amendment would not cure the defective pleading. The court noted that proximate cause remained a "fatal flaw" because, even accepting everything in the complaint as true and considering D'Orazio's expert witness report, advice in 2009 could not be the proximate case of a loss five years later in subsequent renewal periods. As to negligence, the court found that D'Orazio's claim was beyond what the statute covered. As to negligent misrepresentation, the court noted that Restaino's statement (that D&O insurance only covered shareholder lawsuits) was a professional opinion, and even if it was a misstatement of fact, the cause of action is only available if Restaino was in the business of supplying information, but his consulting services were ancillary to selling insurance policies. As to whether Restaino owed a duty under the voluntary undertaking doctrine, the court found that a duty only arises with physical harm.

¶ 30    Regarding the Consumer Fraud Act, the court reiterated its issue with proximate cause. The

10

court also noted that, even accepting the allegations in the complaint as true, Restaino was not trying to mislead or give bad advice to benefit himself because he made more money if he sold more insurance. The court also noted that Restaino was clearly an agent of Farmers. However, when he presented the quote in 2009 for EPLI and D&O insurance, he used Zurich, another insurance company, to procure the quote. The court stated that Zurich was not listed as one of the Farmers entities, so there was no apparent agency with Farmers regarding the 2009 quote. Additionally, prior filings demonstrated that Farmers did not sell D&O insurance. The court noted that this argument was raised in one of the motions to dismiss.

¶ 31    The court entered a written order providing that Restaino and Farmers were dismissed with prejudice and those dismissals were now final and appealable. The court found that no claims remained pending against any party and the matter was closed. D'Orazio appeals.

¶ 32                                    II. ANALYSIS

¶ 33    On appeal, D'Orazio only challenges the circuit court's decision to deny his request to amend his counterclaim and third-party complaint for a third time. Specifically, he raises no argument pertaining to the declaratory action decided in Truck Insurance Exchange's favor or the motions to dismiss his second amendment that were granted in Restaino's and Farmers' favor.

¶ 34    When deciding whether an amendment to a pleading is proper, the circuit court considers: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether the movant had previous opportunities to amend. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). The plaintiff has the burden to satisfy all four factors. *I.C.S. Illinois, Inc. v. Waste Management of Illinois, Inc.*, 403 Ill. App. 3d 211, 220 (2010). We review a circuit court's denial of a motion for leave to amend a complaint

11

for an abuse of discretion. *City of Chicago v. City of Kankakee*, 2019 IL 122878, ¶ 20. A circuit court abuses its discretion when its decision is arbitrary, fanciful, unreasonable, or where no reasonable person would adopt its view. *Seymour v. Collins*, 2015 IL 118432, ¶ 41. Moreover, "we can sustain the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was sound." *City of Chicago v. Holland*, 206 Ill. 2d 480, 492 (2003). We first decide whether D'Orazio's proposed amendment would cure the defective pleading.

¶ 35                            A. Statutory Negligence (Count III)[2]

¶ 36        D'Orazio argues that his proposed amendment stated a cause of action for statutory negligence because Restaino breached his duty of care codified in section 2-2201(a) of the Insurance Placement Liability Act (735 ILCS 5/2-2201(a) (West 2014)), which provides:

> "An insurance producer, registered firm, and limited insurance representative shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured."

¶ 37        Our supreme court has made clear that section 2-2201(a) only imposes a duty of ordinary care *after* a specific request is made and that no such duty is imposed "based on a vague request to make sure the insured is covered." *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 42. D'Orazio's amendment fails to state a cause of action under section 2-2201(a) as he only claimed Restaino should have recommended D&O insurance based on the information known to him and that he misrepresented the scope of D&O insurance. At no point did D'Orazio plead that he specifically requested Restaino to renew, procure, bind, or place D&O insurance.

---

[2] We begin our analysis with count III as D'Orazio has abandoned counts I and II (breach of contract) on appeal. *Supra* ¶ 18.

¶ 38                    B. Common Law Negligence (Counts IV and V)

¶ 39        To state a claim for common law negligence, a plaintiff must plead a duty owed by a defendant to that plaintiff, a breach of that duty, and an injury proximately caused by that breach of duty. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). Here, D'Orazio pled that Restaino owed him a duty because he "voluntarily agreed to provide" insurance advisory services.

¶ 40        Section 323 of the Restatement (Second) of Torts provides for negligent performance of undertaking to render services, which states that:

> "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform this undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm, or
> >
> > (b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323 (1965).

¶ 41        Here, D'Orazio did not plead that Restaino's breach of duty resulted in physical harm. Illinois jurisprudence has consistently provided that the voluntary undertaking doctrine only results in liability for physical harm, which does not include emotional or fiscal harm. *Vassell v. Presence Saint Francis Hospital*, 2018 IL App (1st) 163102, ¶ 58 (collecting cases). The supreme court has provided that the physical harm requirement is mandatory to impose a duty under the voluntary undertaking doctrine. See *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 122 (section 323 of the Restatement (Second) of Torts provides an accurate statement of the law pertaining to the voluntary undertaking doctrine); *Bell v. Hutsell*, 2011 IL 110724, ¶ 12 (providing that the supreme court has looked to section 323 of the Restatement (Second) of Torts in defining the parameters of

13

liability pursuant to the voluntary undertaking doctrine); *Vancura v. Katris*, 238 Ill. 2d 352, 382 (2010) (rejecting a claim for only economic damages finding that "section 323 and our precedents explicitly limit themselves to situations in which the plaintiff has suffered 'physical' or 'bodily' harm"); *Wakulich v. Mraz*, 203 Ill. 2d 223, 243 (2003) (noting that the court had previously quoted section 323 of the Restatement (Second) of Torts favorably).

¶ 42    This court is bound to apply the supreme court's precedent to the facts of the case before us under the fundamental principle of *stare decisis*. *Yakich v. Aulds*, 2019 IL 123667, ¶ 13. Thus, because D'Orazio failed to plead physical harm, his theory of liability under the voluntary undertaking doctrine for his common law negligence claim fails.

¶ 43                    C. Common Law Negligent Misrepresentation (Counts VI and VII)

¶ 44    "To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 334-35 (2006). D'Orazio again relies on the voluntary undertaking doctrine to establish a duty of care. For the reasons previously explained (*supra* ¶¶ 40-42), he failed to state a cause of action for common law negligent misrepresentation because he did not plead physical harm to establish a voluntary undertaking.

¶ 45                    D. The Consumer Fraud Act (Counts VIII, IX, X, and XI)

¶ 46    "The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019

14

IL 123626, ¶ 20; see 815 ILCS 505/1 *et seq.* (West 2014).

¶ 47         Farmers argues that D'Orazio lacked standing to bring claims under the Consumer Fraud Act because he was no longer a shareholder at the time he filed his initial pleading in this case and thereby relinquished any right to sue for monies paid by Collision Revision. "[T]he law in Illinois is well-settled that, to bring a derivative claim, the plaintiff must have been a shareholder at the time of the transaction of which he complains *and must maintain his status as a shareholder throughout the entire pendency of the action*." (Emphasis in original). *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 23. Farmers also points to D'Orazio's amendment wherein he stated that "Collision Revision provided free car repairs to Mr. Restaino in return for his services, in addition to paying in full all insurance premiums on the Farmers policies purchased by Collision Revision, part of which premiums paid for the insurance advice provided by Mr. Restaino." Since counts VIII and IX (pertaining to Restaino's alleged misrepresentations and lack of disclosures) were brought based on Collision Revision's business with Farmers where it paid Farmers for premiums, D'Orazio did not have standing to bring those claims as he was no longer a shareholder.

¶ 48         Nonetheless, D'Orazio argues that Farmers did not assert its standing argument against his amendment before the circuit court and only raised it in its reply brief on its motion to dismiss the second amended counterclaim and third-party complaint. Therefore, he argues that Farmers has "waived" this argument. We note that "waiver" refers to the voluntary and intentional relinquishment of a known right. *Gallagher v. Lenart*, 226 Ill. 2d 208, 229 (2007). It is clear that Farmers did not "waive" its standing argument. Instead, it appears D'Orazio is suggesting that Farmers forfeited its standing argument, as "forfeiture" refers to a party's failure to make the timely assertion of a right. *Id.* Regardless, forfeiture is a limitation imposed on the parties not on the court, therefore, we decline to apply it here. *Klaine v. Southern Illinois Hospital Services*, 2016 IL

15

118217, ¶ 41.

¶ 49     As to counts X and XI relating to Farmers' advertising, D'Orazio would have standing as these counts related to the personal lines of insurance he purchased through Farmers. D'Orazio claimed that Farmers violated section 2 of the Consumer Fraud Act (815 ILCS 505/2 (West 2014)), which provides that it is unlawful to engage in:

> "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce."

To sufficiently plead a cause of action, the plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff proximately caused by the deception. *McIntosh*, 2019 IL 123626, ¶ 21.

¶ 50     Here, in stating a deceptive act or practice by Farmers, D'Orazio points to numerous statements in its advertising materials, such as its use of "rigorously trained" in reference to its agents, its ability to identify risks, its identification of some agents as "elite," its representation that it provided "comprehensive coverage," and its agents offered professional advice. However, these statements are nothing more than mere puffery. See *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 73-74 (2007) (finding that the representation identified by the plaintiff in its pleading was puffery and could not form the basis of an actionable claim under the Consumer Fraud Act). Puffing refers to an exaggeration reasonably to be expected of a seller as to the degree of quality of its product, where the truth or falsity cannot be precisely determined. *Avery v. State Farm*

*Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 173-74 (2005). For example, a general statement that a company's product is the best is not actionable. *Id.* at 174. Also, describing a product as "quality" or as having "high performance criteria" is a subjective characterization that Illinois courts have held to be mere puffing. *Id.* Here, the statements offered by D'Orazio cannot be precisely determined and constitute subjective characterizations where no reasonable person would take such advertising seriously. See *id.*; *Barbara's Sales*, 227 Ill. 2d at 74.

¶ 51        Thus, we find that D'Orazio's proposed third amendment to his counterclaim and third-party complaint would not cure his defective pleading, and the circuit court's decision to deny him leave to amend was not arbitrary, fanciful, unreasonable, or one where no reasonable person would adopt its view. Failure to satisfy any of the four elements necessary for leave to amend a pleading is fatal to D'Orazio's argument on appeal. *Johnson v. Stojan Law Office, P.C.*, 2018 IL App (3d) 170003, ¶ 20; *supra* ¶ 34. Therefore, we need not consider whether his proposed amendment would cause surprise or prejudice to Restaino and Farmers, whether the proposed amendment was timely, or whether D'Orazio had previous opportunities to amend.

¶ 52        For the foregoing reasons, we affirm the court's judgment denying D'Orazio leave to file a third amended counterclaim and third-party complaint.

¶ 53                                III. CONCLUSION

¶ 54        The judgment of the circuit court of Grundy County is affirmed.

¶ 55        Affirmed.

17