**2025 IL 130461**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 130461)

THE VILLAGE OF ARLINGTON HEIGHTS, Appellee, v. THE CITY OF ROLLING MEADOWS, Appellant.

*Opinion filed March 20, 2025.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1      This case concerns the trial court's jurisdiction to determine a sales tax misallocation claim. Plaintiff Village of Arlington Heights filed a complaint in Cook County circuit court against defendant City of Rolling Meadows to recover misallocated sales tax revenue, and the trial court dismissed the complaint for lack of jurisdiction. Rolling Meadows contends the Department of Revenue (IDOR) has

exclusive jurisdiction over tax disputes and the trial court properly dismissed Arlington Heights' complaint. In response, Arlington Heights argues that the trial court had the authority to determine its request for reimbursement of tax funds improperly allocated to Rolling Meadows and that dismissal of its complaint was in error. The appellate court found the trial court had jurisdiction and reversed the judgment of the trial court, finding that dismissal of the complaint was improper. We find that IDOR has exclusive jurisdiction over tax matters, reverse the appellate court's judgment, and affirm the trial court's dismissal of Arlington Heights' complaint for lack of subject-matter jurisdiction.

¶ 2                                    BACKGROUND

¶ 3        In March 2011, Cooper's Hawk Winery and Restaurants (Cooper's Hawk) registered its business located in Arlington Heights with IDOR. The restaurant was wrongly coded in IDOR records with a Rolling Meadows location. IDOR sent a tax location verification letter to Rolling Meadows dated April 1, 2011, and requested that Rolling Meadows verify and correct the listings indicating new, reinstated, or discontinued businesses within its boundaries. Beginning in May 2011, IDOR sent triannual allocation remittance reports, also listing the tax-generating entities within Rolling Meadows. The restaurant opened in June 2011, and sales taxes generated there were disbursed to Rolling Meadows. In August 2011 and annually thereafter, IDOR sent a taxpayer listing to Rolling Meadows denoting sales-tax-paying entities within its boundaries. Likewise, Arlington Heights received IDOR reports and annual listings of taxpayers generating sales taxes within its municipal borders. All the IDOR documents indicated Cooper's Hawk's location as Rolling Meadows. Because neither municipality responded to the notifications with corrections, IDOR accepted the information as correct, per its practice.

¶ 4        In March 2020, Arlington Heights discovered the Cooper's Hawk location error and notified IDOR. The tax revenues generated by Cooper's Hawk between June 2011 and March 2020 exceeded $1.1 million. IDOR reimbursed Arlington Heights for six months of tax revenues in the amount of $109,000. See 65 ILCS 5/8-11-16 (West 2022) (reimbursement limited to tax revenues for the six months prior to discovery of the error); 30 ILCS 105/6z-18 (West 2022) (same). IDOR also corrected its coding so all subsequent taxes generated at Cooper's Hawk would be

credited to Arlington Heights. IDOR informed Arlington Heights that it could pursue an agreement with Rolling Meadows to recoup the remainder of the misallocated taxes. The two municipalities were unable to reach an agreement.

¶ 5 Arlington Heights filed a three-count complaint against Rolling Meadows to recoup the tax revenues generated by Cooper's Hawk and wrongly disbursed to Rolling Meadows. The complaint sought a declaration that Arlington Heights was entitled to the misallocated tax revenue, entry of a judgment against Rolling Meadows for the amount of misallocated taxes and statutory interest, and a directive that Rolling Meadows immediately return the misallocated taxes with interest. The complaint further alleged unjust enrichment and conversion. Rolling Meadows moved to dismiss under sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2022)). In its motion, Rolling Meadows argued, in part, that dismissal was warranted because the trial court lacked subject-matter jurisdiction. The trial court granted Rolling Meadows' motion, in part, and dismissed the complaint with prejudice. It found the trial court lacked subject-matter jurisdiction pursuant to this court's holding in *City of Chicago v. City of Kankakee*, 2019 IL 122878.

¶ 6 The Appellate Court, First District, reversed the trial court's dismissal of the complaint. 2024 IL App (1st) 221729, ¶ 4. It disagreed with the lower court's reliance on *City of Chicago*, determining that case was limited to its facts, which involved a complex tax dispute. *Id.* ¶ 30. In contrast, the appellate court considered the claims in the case at bar to be "straightforward; one municipality accepted sales tax, the amount of which can easily be determined, that another municipality should have received." *Id.* ¶ 4. Relying on *Village of Itasca v. Village of Lisle*, 352 Ill. App. 3d 847 (2004), the appellate court found that "a trial court has jurisdiction involving straightforward sales tax disputes that do not require agency expertise." 2024 IL App (1st) 221729, ¶ 4. Presiding Justice Oden Johnson dissented, criticizing the majority's reliance on *Village of Itasca* and maintaining this court's decision in *City of Chicago*, 2019 IL 122878, is controlling authority and dictates that exclusive jurisdiction for tax disputes is in IDOR. 2024 IL App (1st) 221729, ¶ 39 (Oden Johnson, P.J., dissenting). The dissent also noted that Arlington Heights had already received the statutory remedy. *Id.* ¶ 45.

¶ 7        Rolling Meadows petitioned for leave to appeal to this court, and we allowed it. Ill. S. Ct. R. 315 (eff. Dec. 7, 2023).

¶ 8                                                    ANALYSIS

¶ 9        The issue before us is whether IDOR has exclusive jurisdiction to hear Arlington Heights' tax misallocation claim. Rolling Meadows argues the legislature granted exclusive jurisdiction to IDOR to manage tax disputes, including sales tax misallocations. In support of its argument, it cites the statutory framework concerning taxes, including the limited remedies crafted for reallocation of sales tax revenues, and our decision in *City of Chicago*, 2019 IL 122878. Rolling Meadows asks this court to reverse the appellate court and affirm the trial court's grant of its motion to dismiss. In response, Arlington Heights asks that we affirm the appellate court's finding that *City of Chicago* is limited to complex use tax issues, not the straightforward sales tax reallocation involved here. Arlington Heights argues that *City of Chicago* does not preclude the trial court's subject-matter jurisdiction and therefore jurisdiction is not exclusive to IDOR. Arlington Heights directs our attention specifically to our state constitution's grant of general jurisdiction to the trial court and maintains the statutory tax scheme does not divest the trial court of subject-matter jurisdiction in straightforward sales tax cases.

¶ 10       Subject-matter jurisdiction involves the court's authority to " ' 'hear and determine cases of the general class to which the proceeding in question belongs.' ' " *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 27 (quoting *In re M.W.*, 232 Ill. 2d 408, 415 (2009), quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002)). Trial courts are authorized to "review administrative action as provided by law" and have "original jurisdiction of all justiciable matters," with two exceptions not applicable here. Ill. Const. 1970, art. VI, § 9. "Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc.*, 199 Ill. 2d at 335. A trial court's jurisdiction over an administrative action is dependent on the statutory scheme empowering the trial court to review the administrative action in question. *Board of Education of Warren Township High School District 121 v. Warren Township High School*

*Federation of Teachers, Local 504*, 128 Ill. 2d 155, 165 (1989). The legislature may curtail jurisdiction by enacting a comprehensive statutory scheme creating rights and duties that have no common-law or equitable counterparts. *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 14. Such legislation is not required to explicitly divest the trial court of jurisdiction. *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶¶ 31-32. Rather, divestment may be determined by considering "the statute as a whole, with the relevant provisions construed together and not in isolation and with an eye toward the reason for the law, the problems sought to be remedied, and the purposes to be achieved." *Zahn*, 2016 IL 120526, ¶ 16.

¶ 11        To answer the question presented to this court, we must determine whether the statutory framework evinces the legislature's intent to grant exclusive jurisdiction to IDOR for tax disputes and divests the trial court of subject-matter jurisdiction to determine Arlington Heights' complaint. The statutory framework consists of provisions of the Department of Revenue Law (20 ILCS 2505/2505-1 *et seq.* (West 2022)), the State Finance Act (30 ILCS 105/1 *et seq.* (West 2022)), and the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2022)). Together, the statutory framework provides IDOR with authority regarding the collection, disbursement and correction of tax matters. See 20 ILCS 2505/2505-25 (West 2022) (IDOR authorized to "administer and enforce all the rights, powers, and duties contained in the Retailers' Occupation Tax Act to collect all revenues thereunder"); 35 ILCS 120/3 (West 2022) (IDOR to accept sales tax receipts remitted by retailers); 35 ILCS 120/4 (West 2022) (IDOR authorized to examine and correct tax returns, issue notice of tax liability, impose penalties, accept protests and requests for hearings, and issue final assessments); 35 ILCS 120/8 (West 2022) (IDOR "may hold investigations and hearings"); 30 ILCS 105/6z-18 (West 2022) (IDOR to disburse the sales taxes it collects).

¶ 12        Not only is IDOR tasked with disbursing the sales tax, but it is also tasked with increasing or decreasing the monthly disbursement amount "by an amount necessary to offset any misallocation of previous disbursements." 30 ILCS 105/6z-18 (West 2022); 65 ILCS 5/8-11-16 (West 2022). The offset amount is limited to the prior six months of misallocation. 30 ILCS 105/6z-18 (West 2022) ("The offset amount shall be the amount erroneously disbursed within the 6 months preceding the time a misallocation is discovered."); 65 ILCS 5/8-11-16 (West 2022) ("The

offset amount shall be the amount erroneously disbursed within the previous 6 months from the time a misallocation is discovered."). A municipality is authorized to file an action in the trial court against another municipality when it has lost revenue because of an unlawful rebate agreement. 65 ILCS 5/8-11-21(a) (West 2022). Under that authority, a prevailing municipality "is entitled to damages in the amount of the tax revenue it was denied as a result of the agreement, statutory interest, costs, reasonable attorney's fees, and an amount equal to 50% of the tax." *Id.*

¶ 13    In interpreting statutes, a court's primary objective is to ascertain and give effect to the legislature's intent. *J&J Ventures Gaming*, 2016 IL 119870, ¶ 25. The statutory provisions should be viewed as a whole and relevant statutory provisions construed together. *Id.* The language of the statute is the best evidence of the legislature's intent. *Belleville Toyota, Inc.*, 199 Ill. 2d at 342. In construing the statutory framework, the court may also "consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute in one way or another." *J&J Ventures Gaming*, 2016 IL 119870, ¶ 25. We review issues of statutory construction *de novo*. *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 20.

¶ 14    In the proceedings below, the trial court dismissed Arlington Heights' complaint, in part, because it did not allege the existence of a rebate agreement. Section 2-619 of the Code (735 ILCS 5/2-619 (West 2022)) allows the dismissal of a complaint where defects, defenses, or other affirmative matters defeat the claim. *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 54. Affirmative matter " 'negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint.' " *Id.* (quoting *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994)). In granting Rolling Meadows' motion to dismiss, the trial court reasoned Arlington Heights' complaint did not fall within the narrow category of tax disputes authorized to be brought in the trial court as we instructed in *City of Chicago*. Rolling Meadows established there was no rebate agreement in place between it and Cooper's Hawk with an affidavit submitted by its municipal clerk attesting no tax rebate agreement existed. The trial court found the affirmative matter precluded Arlington Heights from bringing its claim in the trial court. The appellate court concluded that our discussion in *City of Chicago* regarding rebate agreements was not relevant to our

holding and rejected *City of Chicago* as controlling authority, finding it was limited to its facts and was distinguishable. 2024 IL App (1st) 221729, ¶ 25. It did not interpret *City of Chicago* to restrict trial court access only to those municipalities involved in a tax rebate agreement as the trial court found. *Id.* ¶ 26. According to the appellate court, the Municipal Code provision only directs who a municipality may sue and does not preclude a municipality from suing another municipality. *Id.* The court thus determined there is no bar to sales tax actions between municipalities that are not based on post-2004 rebate agreements.

¶ 15    In *City of Chicago*, we recognized that the statutory scheme authorized trial court proceedings only against municipalities involved in a post-2004 sales tax rebate agreement and not at all for use tax challenges. *City of Chicago*, 2019 IL 122878, ¶ 44 (citing 65 ILCS 5/8-11-21(a) (West 2016)). The dispute there involved a sales tax-use tax swap, which the plaintiffs claimed deprived them of their share of tax revenues. *Id.* ¶¶ 8-9. As here, the issue before the court was whether the trial court had jurisdiction to determine the tax dispute. *Id.* ¶ 19. Examining the statutory framework as a whole, we found jurisdiction was exclusively with IDOR with the sole statutory exception for municipalities who allege lost tax revenue as a result of an unlawful rebate agreement. *Id.* ¶ 44 ("Our legislature, however, has not authorized such suits" regarding missourced use taxes, only "for missourced sales tax, and then only as a result of a rebate agreement entered after June 1, 2004."). The trial court recognized this directive when it rejected Arlington Heights' assertion that jurisdiction before it was proper and determined that "a cause of action for missourced sales tax can be brought in the circuit court only as a result of a rebate agreement entered after June 1, 2004."

¶ 16    The appellate court's decision disregards our conclusion in *City of Chicago*. We established a bright-line rule that IDOR has exclusive jurisdiction over tax matters, including misallocation disputes, depriving the trial court of subject-matter jurisdiction. *Id.* We found that the legislature vested IDOR with exclusive jurisdiction to "redistribute the tax revenue due to any error." *Id.* ¶ 39. The sales tax misallocation here was an error that the plain language of the statute provides only IDOR may correct. The statutory tax framework allows for trial court jurisdiction only in the narrow circumstances involving certain rebate agreements. The appellate court improperly expanded our ruling by disregarding the limited right. We reiterate our finding in *City of Chicago* that IDOR is vested with exclusive

- 7 -

jurisdiction in tax disputes and the trial court lacks subject-matter jurisdiction to determine them.

¶ 17    Arlington Heights and the appellate court attempt to distinguish *City of Chicago* by asserting it concerned use tax, not sales tax as at issue in the instant case. Contrary to their claims, this court addressed both sales and use taxes in *City of Chicago*. *Id.* ¶¶ 30-38 (discussing IDOR authority regarding sales taxes and use taxes); *id.* ¶ 42 ("plaintiffs, in essence, are seeking to use the circuit court to conduct a full-scale audit and redistribution of state taxes"). The holding makes clear that the statutory framework allows a trial court action only for unlawful sales tax rebate agreement disputes. Use tax and all other sales tax claims are precluded from the court's subject-matter jurisdiction.

¶ 18    Arlington Heights and the appellate court also attempt to distinguish *City of Chicago* on the basis of the difficulty of the tax matter presented. Arlington Heights maintains that the *City of Chicago* decision rested on the complexity of the tax issue before the court, and the appellate court so interpreted our opinion. The appellate court found that jurisdiction was proper in IDOR only for complex tax issues and, because the issue before the trial court was uncomplicated and did not require IDOR's expertise or resources, the trial court had jurisdiction to determine the case. 2024 IL App (1st) 221729, ¶ 31. That interpretation is incorrect. The appellate court relied on this court's statement in *City of Chicago*, 2019 IL 122878, ¶ 42, that IDOR had the required expertise to effectuate the reallocation based on the complexity of the use tax calculations in contention. 2024 IL App (1st) 221729, ¶ 31. In addition to our discussion regarding IDOR's expertise to determine the tax dispute there, we expressly stated that the difficulty of the task before the court does not dictate jurisdiction. *City of Chicago*, 2019 IL 122878, ¶ 28 (fact that tasks are usually performed by trial court is not dispositive of jurisdiction).

¶ 19    By looking at the expertise needed as the determinative factor regarding jurisdiction, Arlington Heights and the appellate court confuse primary jurisdiction with subject-matter jurisdiction. As stated above, " 'subject matter jurisdiction' refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota*, 199 Ill. 2d at 334. In contrast, the "doctrine of primary jurisdiction provides that where 'a court has jurisdiction over a matter, it should in some instances stay the judicial proceedings

pending referral of the controversy, or a portion of it, to an administrative agency having expertise in the area.' " *Board of Education of Warren Township High School District 121*, 128 Ill. 2d at 162 (quoting *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 444 (1986)). The doctrine of primary jurisdiction allows the trial court to refer cases requiring agency expertise to the agency for determination but is applicable only in cases where the trial court has original or concurrent jurisdiction. *West Bend Mutual Insurance Co. v. TRRS Corp.*, 2020 IL 124690, ¶¶ 33, 35.

¶ 20    The appellate court relied on a sales tax rebate case concerning a false tax site claim, *Village of Itasca*, as support for its position that the level of required expertise determines jurisdiction. In that case, the Village of Itasca sought, in part, the return of sales tax revenue it asserted was improperly diverted to the Village of Lisle as part of a sales tax rebate agreement between the Village of Lisle and the taxpayer. *Village of Itasca*, 352 Ill. App. 3d at 849-50. One issue before the appellate court was whether the trial court improperly dismissed the complaint for lack of subject-matter jurisdiction. *Id.* at 852. To determine jurisdiction, the appellate court concluded that the trial court needed only to make a factual finding about whether the tax-generating business misrepresented its sales location. *Id.* at 855. It found that the task before the trial court did not require agency expertise, as it was the type of determination the court generally made. *Id.*

¶ 21    We rejected this argument in *J&J Ventures Gaming*, 2016 IL 119870, ¶¶ 24-25, and reiterated in *City of Chicago*, 2019 IL 122878, ¶ 28, that "even if the task before the circuit court is one courts perform frequently, such as interpreting a contract, that is not dispositive of whether the court has jurisdiction." The discussion in *Village of Itasca* on which the appellate court relied was about concurrent jurisdiction. *Village of Itasca*, 352 Ill. App. 3d at 853. Concurrent jurisdiction requires that the trial court have jurisdiction. A trial court has concurrent jurisdiction with an administrative agency only when the enacting legislation does not deprive the trial court of original jurisdiction. *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 287 (1994).

¶ 22    The *Village of Itasca* court also found that, where the legislature removes general jurisdiction from the trial court, the divestiture must be explicit, and it concluded that nothing in the statutory tax scheme divested the trial court of

jurisdiction. *Village of Itasca*, 352 Ill. App. 3d at 852. It relied on the holding in *Skilling*, 163 Ill. 2d at 287, to support its conclusion that divestiture must be explicit. *Village of Itasca*, 352 Ill. App. 3d at 852. In *Skilling*, we found that jurisdiction for the plaintiff's workers' compensation claim was concurrent between the administrative agency and the trial court. *Skilling*, 163 Ill. 2d at 287. Because resolution of the issue before the court did not require agency expertise, we found that the trial court retained primary jurisdiction. *Id.* at 288-89.

¶ 23       Subject-matter jurisdiction does not allow for exceptions based on the level of required expertise or any other factor. See *McCormick v. Robertson*, 2015 IL 118230, ¶ 20 ("[s]o long as a matter brought before the circuit court is justiciable and does not fall within the original and exclusive jurisdiction of our court, the circuit court has subject matter jurisdiction to consider it"); *Belleville Toyota*, 199 Ill. 2d at 335 ("*except in the area of administrative review*, the jurisdiction of the circuit court flows from the constitution" (emphasis in original)). Because the statutory framework divests the trial court of jurisdiction, there is no concurrent jurisdiction in tax matters.

¶ 24       This court later rejected the requirement of explicit divestiture relied on in *Village of Itasca* and *Skilling* in *J&J Ventures Gaming*, 2016 IL 119870. In that case, we looked at *People v. NL Industries*, 152 Ill. 2d 82 (1992), on which *Skilling* relied, and determined that the case did not support a rule that trial court jurisdiction must be explicitly divested. *J&J Ventures Gaming*, 2016 IL 119870, ¶ 24. Rather, we acknowledged that "*NL Industries* implicitly recognized that legislative intent to divest circuit courts of jurisdiction may be discerned by considering the statute as a whole." *Id. Village of Itasca* does not support Arlington Heights' position. Moreover, contrary to the assertions of Arlington Heights and the appellate court, in *City of Chicago*, we recognized that the legislature divested the trial court of jurisdiction in all tax matters except for the express grant of trial court jurisdiction for municipalities seeking tax revenues misallocated through an unlawful rebate agreement. *City of Chicago*, 2019 IL 122878, ¶ 44.

¶ 25       The legislature created a statutory scheme in which it authorized IDOR to handle tax matters. It provided IDOR broad powers to levy and collect taxes, to investigate and hear tax disputes, and to redistribute misallocations. The statutory scheme establishes a limited IDOR remedy for tax misallocations not involving a

rebate agreement, that is, the six-month lookback. The statute creates a remedy in the trial court only for those parties seeking reimbursement based on a rebate agreement. The appellate court ignores that the dispute in *Village of Itasca* involved a rebate agreement and that a trial court action was expressly authorized in the statutory scheme. Arlington Heights did not allege the existence of a rebate agreement in its complaint. Finally, as noted in the dissent, the controlling authority is our decision in *City of Chicago*, not the appellate court's opinion in *Village of Itasca*. For the reasons above, we now overrule *Village of Itasca*.

¶ 26    Arlington Heights next complains that limiting it to the statutory remedy of six months' reimbursement and precluding it from seeking additional reimbursement in the trial court is unjust and unfair and results in a windfall to Rolling Meadows. "Where a statute creates a new right or imposes a new duty or liability, unknown to the common law, and at the same time gives a remedy for its enforcement, the remedy so prescribed is exclusive." *Kosicki v. S.A. Healy Co.*, 380 Ill. 298, 302 (1942). Arlington Heights argues that *Kosicki* dictates that express exclusionary words are necessary to limit jurisdiction and none are included in the statutory remedy provision. *Id.* (where a statute provides a new remedy without words making it exclusive, "it will be deemed to be cumulative only and not take away prior remedies"). Arlington Heights has no entitlement to receive tax revenues beyond what is statutorily provided. *People ex rel. Shirk v. Glass*, 9 Ill. 2d 302, 311 (1956) (levy, assessment, and collection of taxes are purely statutory, and the levy, assessment, and collection of taxes can only be made as expressly pointed out in the statute). Arlington Heights was afforded the statutory remedy when it was reimbursed the tax revenues collected for the six months prior to Arlington Heights' discovery of the Cooper's Hawk miscoding. The statute provides for an exclusive and limited remedy in the trial court only for parties to a rebate agreement. We filed the *City of Chicago* opinion in 2019, and the legislature has not amended the statute to correct any perceived misinterpretation on our part regarding the available remedies or the exclusivity of IDOR's jurisdiction. See *Independent Voters of Illinois v. Illinois Commerce Comm'n*, 117 Ill. 2d 90, 99-100 (1987) (this court's construction of a statute becomes, in effect, a part of the statute, which the legislature may alter through amendment).

¶ 27    We acknowledge it may appear unfair that Arlington Heights was deprived of a decade of tax revenues from the Cooper's Hawk located within its municipal

boundaries. When considering the equities, we keep in mind the obligations that the statutory scheme places on municipalities. The six-month reimbursement limit serves to encourage municipalities to timely review the tax reports IDOR regularly sends. Both Arlington Heights and Rolling Meadows were required to regularly review the reports provided by IDOR listing the tax revenue sources within their respective municipal boundaries, and neither municipality did so. They each had multiple opportunities to correct Cooper's Hawk's location. As indicated in the record, IDOR first sent a notification to Rolling Meadows in April 2011, in which it added Cooper's Hawk as a revenue-generating entity within Rolling Meadows' boundaries. 65 ILCS 5/8-11-16 (West 2022) ("The Department shall also provide monthly updates to each municipality showing additions or deletions to the list of retail outlets within the municipality."). Rolling Meadows and Arlington Heights were both informed of Cooper's Hawk's taxing situs in triannual reports IDOR sends to municipalities. Finally, IDOR sent annual taxpayer listings to both Arlington Heights and Rolling Meadows. See *id.* (IDOR "shall submit to each municipality each year a list of those persons within that municipality who are registered with the Department under the Retailers' Occupation Tax Act"). Neither municipality corrected the improper coding for Cooper's Hawk, and per IDOR policy, lack of response indicates agreement with the listing.

¶ 28   In summary, we find based on the statutory framework and this court's holding in *City of Chicago* that exclusive jurisdiction for disputes regarding the misallocation of sales tax revenues is with IDOR. *City of Chicago* expressly provides that only a sales tax misallocation complaint resulting from an unlawful rebate agreement, entered after June 2004, may be filed in the trial court. *City of Chicago*, 2019 IL 122878, ¶ 44. Thus, while *City of Chicago* was concerned with the misallocation of use taxes and involved a complicated distribution formula for those taxes and the sales taxes in dispute in the current case are undisputed and straightforward, *City of Chicago* ultimately supports Rolling Meadows and the trial court's conclusion that it was without subject-matter jurisdiction to hear Arlington Heights' sales tax misallocation complaint. Because IDOR has exclusive jurisdiction to determine misallocated tax cases, the trial court lacked subject-matter jurisdiction to hear Arlington Heights' complaint and correctly dismissed the complaint. The appellate court erred in reversing the dismissal.

¶ 29                    CONCLUSION

¶ 30        The trial court properly dismissed the complaint with prejudice for lack of subject-matter jurisdiction, as IDOR has exclusive jurisdiction to determine sales tax misallocation disputes, and the appellate court erred in finding the trial court was not divested of subject-matter jurisdiction.

¶ 31        Appellate court judgment reversed.

¶ 32        Circuit court judgment affirmed.